IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| RONNIE CRISP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:04-CV-0001-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 7 2005

CLERK, U.S. DISTRICT COURT
By _____
   Deputy

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court upon Plaintiff's Complaint filed January 2, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for supplemental security insurance benefits and for a period of disability and disability benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a Brief in support of his Complaint on April 20, 2004, Defendant filed her Brief on May 19, 2004, and Plaintiff filed his Reply Brief on June 1, 2004. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This Court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Complaint with prejudice.

### I. STATEMENT OF THE CASE

On April 7, 2000, Plaintiff filed an application for supplemental security income benefits, with a protected filing date of April 7, 2000, and an application for a period of disability and

disability insurance benefits, both alleging disability beginning September 1, 1999. Tr. 21, 387. Plaintiff's applications were denied initially and upon reconsideration. Tr. 84-86, 89-92, 394-96, 397-99. Plaintiff filed a Request for Hearing by Administrative Law Judge on May 9, 2001, and this matter came for hearing before the Administrative Law Judge ("ALJ") on February 12, 2002. Tr. 52, 56-75. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 58-70. A vocational expert ("VE"), Dillon Snowden, testified as well. Tr. 70-75. The ALJ issued an unfavorable decision on February 22, 2002. Tr. 18-31.

In his opinion, the ALJ noted that Plaintiff's earnings record showed that he had sufficient quarters of coverage to remain insured through at least December 31, 2005. Tr. 21. He noted that Plaintiff has past relevant work experience as a heavy equipment operator. Tr. 28. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 30. He found that Plaintiff had impairments, including coronary artery disease, residual impairment status-post heart bypass surgery, diabetes, hypertension, sever obstructive sleep apnea, hypersomnia, a shrapnel injury to his left arm, left cubital tunnel syndrome, bilateral carpal tunnel syndrome, headaches and jaw pain secondary to septoplasty and left parotidectomy surgery, post-traumatic stress disorder, depression, and a history of alcohol abuse. *Id.* He found that Plaintiff had a severe impairment. Tr. 22. He further found that Plaintiff's severe impairments did not meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. Tr. 22-29.

The ALJ found that Plaintiff retained the RFC for light work, limited by the restrictions that he cannot work in extreme hot or cold; he cannot work around strong chemicals, dust, or smoke; he

cannot do tasks requiring prolonged repetitive use of his left non-dominant hand; he is limited to simple, non-complex tasks in a routine setting; and his interpersonal contact with other people should only be incidental to the work performed. Tr. 30. He found that Plaintiff was not able to perform his past relevant work. Tr. 28, 30. In his testimony, the vocational expert indicated that a person with Plaintiff's RFC and vocational history could perform the jobs of machine tender, with 10,600 jobs in Texas and 165,000 nationally; and inspector, with 19,000 jobs in the state and 330,000 nationally. Relying upon this testimony, the ALJ found that Plaintiff could perform a significant number of jobs that existed in the regional and national economies. Tr. 29, 30. Therefore, he concluded that Plaintiff was not under a disability as defined by the Social Security Act at any time through the date of his decision. Tr. 30.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 12, 2001. Tr. 16. The Appeals Council indicated in its opinion dated September 12, 2003, that it had considered Plaintiff's contentions but, nevertheless, concluded that there was no basis to reverse the ALJ's decision. Tr. 10-12. On November 20, 2003, the Appeals Council set aside its decision of September 12, 2003, to consider additional information. Tr. 5-9. However, after reviewing the additional information, the Appeals Council again concluded that there was no reason to reverse the ALJ's decision. *Id.* The ALJ's decision thus became the final decision of the Commissioner.

On January 2, 2004, Plaintiff commenced this action seeking judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The Court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the

Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance," and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The Court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity, which is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton*, 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 29, 30.

### III. DISCUSSION

Plaintiff alleges that the ALJ did not adequately considered the functional limitations imposed by his impairments; failed to adequately consider other agency opinions as to Plaintiff's disability; failed to properly consider Plaintiff's credibility; and failed to properly apply the vocational rules of Appendix 2.

A. **Whether the ALJ failed to adequately consider the functional limitations imposed by his impairments.**

Plaintiff argues that the RFC finding of the ALJ is not supported by substantial evidence, claiming that the ALJ erred by failing to delineate the functional limitations imposed by Plaintiff's bilateral carpal tunnel syndrome, diabetes, and sleep apnea. He further argues that the ALJ failed to incorporate Dr. Carsner's opinion as to Plaintiff's lifting limitation in his RFC assessment, failed to appropriately consider the opinions of the State agency physicians, and failed to incorporate the limitations noted under the "part B" criteria into his RFC finding.

Plaintiff argues that the ALJ erred by failing to find and set forth the functional limitations imposed by his bilateral carpal tunnel syndrome, diabetes, and sleep apnea. In his opinion, the ALJ indicated that the evidence supported a finding that Plaintiff "has a history of coronary artery disease, residual impairment status-post heart bypass surgery, diabetes, hypertension, severe obstructive sleep apnea, hypersomnia, a shrapnel injury to his left arm, left cubital tunnel syndrome, bilateral carpal tunnel syndrome, headaches, and jaw pain secondary to septoplasy and left parotidectomy surgery, post-traumatic stress disorder, depression, and a history of alcohol abuse." Tr. 22. The ALJ noted without further discussion that Plaintiff "has a severe impairment." *Id.*

Plaintiff noted that an impairment may only be found to be not "severe" if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984)).

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an

impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985), the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Id.* at 1101 (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel,* 219 F.3d 378 (5th Cir. 2000), the Court held that the standard set forth in *Stone* remained the correct standard. *Id.* at 392.

Plaintiff contends that the ALJ should have evaluated and described the limitations imposed by each of the noted impairments. Plaintiff further contends that "it is inconsistent for the ALJ to find that diabetes is a severe impairment and then to find it has no effect on [Plaintiff's] ability to function." Pl. Reply at 3.

In his opinion, the ALJ noted that electromyogram testing showed evidence of left ulnar and median nerve neuropathy that was consistent with left cubital tunnel syndrome and bilateral carpal

tunnel syndrome, with no evidence of active nerve denervation of the distal musculature. Tr. 23. He also noted that Plaintiff had normal range of motion in his left arm, had negative Tinel's signs, and had good grip strength in both arms, and x-rays of the left elbow were normal. *Id.* He also noted that although Plaintiff complained that the pain in his left arm was constant and caused sleep disturbance, he was nevertheless able to work as a heavy equipment operator despite such pain. *Id.* The ALJ noted that a report of the June 2000 consultative examination indicated that Plaintiff had decreased grip strength and decreased coordination of the left hand, although he was able to use his hand to do buttoning. Tr. 24. He lacked full extension of the left elbow, but he was able to extend it to 175 degrees and he had no objective peripheral arthropathy. *Id.*. He specifically noted that Plaintiff has had pain and tingling in his left arm and hand as a result of his cubital and carpal tunnel syndromes, although he had good range of motion of the left arm and could perform gross and some fine motor activities with his left hand. Tr. 25. The ALJ also noted that although Plaintiff has carpal tunnel syndrome in his right hand, examination did not indicate that his right hand or arm function was significantly affected by such condition. *Id.*

The ALJ noted that Plaintiff reported mild excessive daytime sleepiness in August 2000, with sleep apnea episodes at night. Tr. 24. He noted Plaintiff's diagnosis of hypersomnia and severe obstructive sleep apnea, with symptoms that initially improved with CPAP treatment, which Plaintiff did not continue because of chronic sinus congestion and because he could not stand to have anything on his face. *Id.* The ALJ noted in his opinion that although Plaintiff has had significant sleep disturbance because of his sleep apnea, he has not had severe daytime shortness of breath. Tr. 25.

The ALJ also noted that although Plaintiff was diagnosed with diabetes in 2001, the evidence indicated that such condition was well-controlled by treatment. Tr. 24. He noted that there

was no evidence of any end organ damage, neuropathy, or significant retinopathy, nor was there evidence of acidosis or other diabetic crisis. *Id.*

The record demonstrates that the ALJ appropriately considered and evaluated the limitations imposed by Plaintiff's bilateral carpal tunnel syndrome, diabetes, and sleep apnea. He discussed each of these conditions and incorporated a limitation that Plaintiff could not perform tasks requiring prolonged or repetitive use of his left non-dominant hand. The finding that Plaintiff had a severe impairment at step 2 of the sequential evaluation process does not inherently conflict with the ALJ's determination of the limitations imposed by Plaintiff's impairments.

Plaintiff argues that the ALJ failed to incorporate Dr. Carsner's opinion as to Plaintiff's lifting limitation in his RFC assessment and failed to appropriately consider the opinions of the state agency physicians.

In his opinion, the ALJ noted that the consultative examiner, Dr. Carsner, opined that Plaintiff should be able to lift and carry 15 pounds with his left hand. Tr. 25. He further noted that Plaintiff's grip strength was slightly decreased, but his strength was full in his right dominant hand. He found that Plaintiff had carpal tunnel syndrome in his right hand, but examinations did not indicate that his right hand or arm function was significantly affected by that condition. *Id.* The ALJ ultimately found that Plaintiff retained the physical residual functional capacity to perform a limited range of light work. Tr. 24. He noted that light work is defined as work requiring a maximum lifting of 20 pounds and frequent lifting of ten pounds pursuant to 20 C.F.R. §§ 404.1567, 416.967. Tr. 25. He incorporated a limitation on doing tasks requiring prolonged repetitive use of his left non-dominant hand into his RFC finding. Tr. 24. In so doing, the ALJ discussed the evidence in the record as to the deficits reported with Plaintiff's left and right hand functioning. The record demonstrates that the ALJ appropriately weighed the evidence in the record, including Dr. Carsner's

opinion as to a limitation on lifting with Plaintiff's left non-dominant hand, and he incorporated into his RFC finding those limitations that he found were supported by the evidence. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2003). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ did not err in determining that Plaintiff retained the RFC to perform a limited range of light work, particularly with the incorporated limitation on prolonged repetitive use of the left non-dominant hand.

The ALJ also appropriately considered the opinions of the state agency physicians. Plaintiff argues that the ALJ should have explained his disagreement with the state agency physician who indicated that Plaintiff was limited in reaching, handling, fingering, and feeling. The record indicates that the agency physician indicated such limitations with Plaintiff's left hand only. Tr. 284. The physician noted that at the consultative examination, Plaintiff was able to button his clothes but had decreased grip strength and difficulty picking up coins with the left hand. Tr. 282. The physician also noted that the limitations alleged by Plaintiff were not fully supported by the medical and other evidence in the file. Tr. 286.

In his opinion, the ALJ noted that he had considered the evaluations of the state agency physicians at the initial and reconsideration determinations and found that those decisions were consistent with the evidence that was before them at the time those decisions were made. Tr. 28. He indicated that those decisions supported his finding that Plaintiff retained the RFC to perform a significant range of work activity. *Id.* He incorporated a limitation on the prolonged repetitive use of the left non-dominant hand. Plaintiff notes that this limitation does not precisely incorporate the limitation indicated by the state agency physician. The record demonstrates that the ALJ considered such opinion and appropriately exercised his discretion in determining the relative weight to be given

this piece of evidence. *Chambliss*, 269 F.3d at 523. The ALJ did not err in considering the opinions of the state agency physicians.

Plaintiff further argues that the ALJ erred by failing to incorporate the limitations noted under the "part B" criteria into his RFC finding. In evaluating Plaintiff's mental impairments, the ALJ noted that Plaintiff was diagnosed with major depression, post-traumatic stress disorder, and alcohol dependence. Tr. 27. He evaluated Plaintiff's degree of functional loss as a result of his mental impairments and found that under the "part B" criteria, Plaintiff's mental impairments moderately restricted his activities of daily living; created moderate difficulties in his ability to maintain social functioning; created moderate difficulties in maintaining concentration, persistence, or pace; and had never resulted in an episode of decompensation. Tr. 27. The ALJ further found Plaintiff's mental impairments did not meet the "part C" criteria. *Id.* In his RFC assessment, the ALJ found that Plaintiff's mental impairments reduced his RFC by limiting him to simple, non-complex tasks in a routine setting; and his interpersonal contact with other people should only be incidental to the work performed. Tr. 27. He noted that he found that Plaintiff was limited to simple, non-complex tasks because of the stress that his flashbacks, sleep disturbance, headaches, and overall condition cause, although he has the intellectual and cognitive ability to do more than simple tasks. *Id.* He further explained that he found that Plaintiff should only have incidental contact with others because of his history of being isolative and not wanting to be around others. *Id.*

Plaintiff notes that the ALJ's finding of degree of functional loss as a result of Plaintiff's mental impairment does not precisely coincide with the limitations incorporated into his RFC finding. However, the ALJ's evaluation of the degree of functional loss under the "part B" criteria that was undertaken in determining whether Plaintiff's mental impairments meet or equal in severity any impairment in the Listing of Impairments, is separate and distinct from the RFC finding. The

ALJ set forth and explained the limitations imposed on Plaintiff's RFC as a result of his mental impairment and did not err in doing so.

I find that the ALJ did not err in making his residual functional capacity determination and that such determination is supported by substantial evidence.

**B. Whether the ALJ improperly failed to consider the Veterans Administration determination that Plaintiff is 50% disabled.**

Plaintiff also claims that the ALJ did not properly consider the determination by the Veterans Administration ("VA") that Plaintiff is 50% disabled. Plaintiff notes that the VA increased his rating status based on post-traumatic stress disorder from 30% to 50%, effective April 23, 1999. Tr. 383. Plaintiff notes that the ALJ acknowledged such increase in his opinion but argues that the ALJ did not accord such determination adequate weight, failed to comment upon what Plaintiff characterizes as a "conclusion of unemployability," and failed to indicate his reasons for disagreement with such conclusion or the weight given to the VA opinion. Pl. Brief at 16-17.

In his opinion, the ALJ noted that the Plaintiff "has been found to have a 50% service connected disability by the VA." Tr. 28. He noted that the VA decision indicated that a person with such a rating "has reduced reliability and productivity because of symptoms" but further noted that the evidence did not show that Plaintiff has had all of the listed example symptoms. *Id.* He noted that the VA decision states that Plaintiff had a GAF score of 50 but that the VA qualifies the conclusion by stating that Plaintiff had "<u>moderate</u> difficulty in social and occupational functioning." *Id.* He noted that although VA regulations may equate moderate limitations with disability, such limitations were not necessarily disabling under applicable Social Security regulations. *Id.* The ALJ indicated his agreement in part with the VA decision, finding that Plaintiff has "moderate limitations from his post-traumatic stress disorder and depression," but he disagreed with the conclusion that Plaintiff was unable to work because of these limitations. Tr. 28.

A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. *Chambliss*, 269 F.3d at 522. The opinion of the ALJ indicates that he considered the determination of the VA as well as the information provided by the VA. *See* Tr. 28. The ALJ clearly scrutinized the VA determination and the information supporting such determination as required by applicable Fifth Circuit precedent. *See Loza*, 219 F.3d at 395. He specifically discussed the different standards of the VA and SSA regulations, indicated that he agreed with the VA determination in part, and acknowledged that the evidence indicated that Plaintiff has had disturbance of mood and motivation and moderate difficulties in social and occupational functioning. Tr. 28. The record and the ALJ's opinion demonstrate that the ALJ appropriately considered and weighed the opinion of the VA that Plaintiff had a 50% service connected disability.

C.  **Whether the ALJ failed to give due consideration to Plaintiff's credibility.**

Plaintiff argues that the ALJ failed to appropriately consider Plaintiff's credibility and to fully articulate his reasons for his credibility finding. In his opinion, the ALJ noted that he had considered Plaintiff's subjective allegations, including pain and other symptoms in accordance with 20 C.F.R. § 404.1529, § 416.929, and Social Security Ruling 96-7p. Tr. 23. In evaluating Plaintiff's credibility, the ALJ discussed the evidence in the record, including the testimony of Plaintiff. Tr. 23-25. He specifically and extensively discussed the objective medical findings regarding Plaintiff's impairments, Plaintiff's subjective allegations, and the progress and treatment notes indicating Plaintiff's symptoms and the limitations imposed by his impairments. Tr. 25-26. He noted that the findings regarding Plaintiff's heart condition were consistent with the ability to perform light work. Tr. 25. He noted that examinations did not indicate limitations of right hand or arm function. *Id.*

He noted that although Plaintiff did not use the prescribed CPAP machine for long, he has not had severe daytime shortness of breath. *Id.* He noted that the evidence indicated that Plaintiff's diabetes was well-controlled without severe side effects. *Id.* The ALJ also discussed the improvements in Plaintiff's mental impairments with treatment and the findings of the psychiatric consultative examiner. Tr. 26.

Ultimately, the ALJ found that Plaintiff's subjective allegations were not entirely credible in that they were out of proportion to the remaining evidence. Tr. 25. The ALJ's opinion did not make a single, conclusory statement regarding credibility but rather extensively discussed Plaintiff's subjective allegations and the findings in the medical record. Questions of credibility are the responsibility of the ALJ to resolve. *Masterson*, 309 F.3d at 272. The ALJ did not err in making a determination of Plaintiff's credibility, and he did not fail to adequately articulate the basis for such finding. The ALJ's credibility finding that Plaintiff's subjective allegations were not entirely credible is supported by substantial evidence.

**D.  Whether the ALJ failed to properly apply the vocational rules of Appendix 2.**

Plaintiff alleges that the ALJ failed to properly apply the vocational rules of Appendix 2, noting that at the time of the ALJ decision, he was more than 54 years 4 months of age. Plaintiff argues that the ALJ should not have mechanically applied the Grids and should have considered that purusant to 20 C.F.R. §§ 404.1562 and 416.963, a person age 55 or older is considered to be a person of "advanced age," rather than a person "closely approaching advanced age." Plaintiff notes that the ALJ should have considered the application of Rules 202.01 and 202.02, applicable to persons of advanced age, which would direct a finding of "disabled." Pl. Brief at 20.

In his opinion, the ALJ noted that Plaintiff was 54 years old at the time of his decision, a person "closely approaching advanced age." Tr. 29. He noted that when a claimant cannot perform

a full range of a particular work activity or is subject to non-exertional limitations, the Grids cannot be used to direct a finding of "disabled" or "not disabled" but may be used as a framework to guide the decision. Tr. 28-29. He noted that if Plaintiff were able to perform a full range of light work, application of Rules 202.10 - 202.12 would direct a finding of "not disabled," regardless of the transferability of work skills. Tr. 29. The ALJ did not, however, rely upon a mechanical application of the Grids. Rather, he relied upon the testimony of the VE, who indicated that he considered whether a person of Plaintiff's age, education, and work history, with the RFC to perform a limited range of light work, could perform work which exists in significant numbers in the national economy. *Id.*

Pursuant to 20 C.F.R. § 404.1563, age categories are not to be applied mechanically in a borderline situation, "within a few days to a few months of reaching an older age category." Plaintiff was some seven months from the next age category at the time of the ALJ decision. Although Plaintiff was 56 years of age at the time of the decision of the Appeals Council, the ALJ decision is before this Court as the final decision of the Commissioner. I find that the ALJ did not err in using the applicable vocational rules for a person "closely approaching advanced age" as a guideline in making his determination at step 5 of the sequential evaluation process.

### IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this Court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's Complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file

written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 6th day of March, 2005.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**